# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 SEP 18 P 4: 04

CLERK _____
S. DIST. OF GA.

|  |  |  |
|---|---|---|
| SAMUEL COOPER, ALBERT FERGUSON, and HERBERT H. MILLER, JR., on behalf of themselves and all others similarly situated, | : : : : | CIVIL ACTION |
| Plaintiffs, | : |  |
| v. | : |  |
| PACIFIC LIFE INSURANCE COMPANY and PACIFIC SELECT DISTRIBUTORS, INC., | : : | |
| Defendants. | : | NO. CV203-131 |

## O R D E R

Plaintiffs, Samuel Cooper, Albert Ferguson, and Herbert H. Miller, Jr., filed the above-captioned case against Defendants, Pacific Life Insurance Company and Pacific Life Select Distributors, Inc. (collectively, "Pacific Life"), pursuant to §§ 10(b) and 29(b) of the Securities and Exchange Act of 1934, codified at 15 U.S.C. §§ 78j(b) and 78cc(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated under § 10(b) of the Act.

AO 72A
(Rev. 8/82)

The case has been certified as a class action, and is before the Court on Defendants' motion to decertify the class. Because Plaintiffs are entitled to a presumption of reliance under governing law, and because Defendants' other arguments are classwide disputes that go to the merits, the motion will be **DENIED**.

**BACKGROUND**

> A variable annuity is an insurance contract that is subject to regulation under state insurance and [federal] securities laws. Although variable annuities offer investment features similar in many respects to mutual funds, a typical variable annuity offers three basic features not commonly found in mutual funds: (1) tax-deferred treatment of earnings; (2) a death benefit; and (3) annuity payout options that can provide guaranteed income for life.

National Association of Securities Dealers ("NASD") Notice to Members 99-35.[1]

Cooper, Ferguson, and Miller, like the other class members, purchased variable annuity contracts from Pacific Life through a registered representative of an independent NASD-registered broker-dealer. Plaintiffs purchased the annuities for their Individual Retirement Accounts ("IRAs"), using

---

[1]   See also Tommy F. Thompson, Nonqualified Variable Annuities: A Product In Search of a Coherent Theory, 79 N.D. L. Rev. 439, 453-55, 467-68, 481-84, 490-93 (2003).

rollover funds from the retirement plan operated by their former employer. Plaintiffs' complaint alleges that Defendants failed to disclose to them that the tax-deferral aspect of the variable annuity was redundant, and that Defendants failed to ensure that appropriate suitability determinations were made with respect to their purchases.

Plaintiffs contend that the variable annuity's tax shelter is the sole reason that it exists in the marketplace. To the contrary, Defendants maintain that the variable annuity's other features, such as lifetime income payments (or "annuitization") and the death benefit feature, attract qualified plan investors. See Cooper v. Pacific Life Ins. Co., 229 F.R.D. 245, 249-51 (S.D. Ga. 2005)(describing the parties' arguments regarding these features of the product).

On May 9, 2005, the Court certified the case as a class action, and appointed Cooper, Ferguson, and Miller as class representatives, on behalf of all persons who purchased an individual variable annuity contract from Pacific Life, between August 19, 1998, and April 30, 2002, to fund a contributory retirement plan or arrangement qualified for favorable tax treatment under the Internal Revenue Code, codified in

3

pertinent part at 26 U.S.C. §§ 401, 403, 408, 408A, or 457 (collectively, "qualified plans").

## STANDARD ON A MOTION TO DECERTIFY A CLASS ACTION

When the Court certified the class, it undertook a "rigorous analysis" to determine whether the claims and evidence presented were sufficient to warrant class treatment. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). Nevertheless, a certification order is "inherently tentative," and "the judge remains free to modify [the certification order] in the light of subsequent developments in the litigation," because conformance with Rule 23 is a continuing necessity. Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 n.11 (1978); Gen. Tel. Co., 457 U.S. at 160.

Consequently, if the record, as developed through the parties' discovery, demonstrates that Plaintiffs' certification motion was granted improvidently, the Court will decertify the class.

## DISCUSSION

In the certification order, the Court determined that common questions of law and fact predominated in the case.

4

Particularly, the Court certified the class based on Plaintiffs' theories that Pacific Life engaged in a common course of conduct to target qualified plan investors for variable annuities through material omissions in the prospectus and that Pacific Life could be liable for failure to oversee, and conduct, suitability determinations of individual customers' purchases. <u>Cooper</u>, 229 F.R.D. at 251-65.

In reaching that conclusion, the Court considered the elements of a § 10(b) claim to determine whether Plaintiffs' case could be proven with evidence common to the class. "A successful cause of action under Section 10(b) or Rule 10b-5 requires that the plaintiff prove (1) a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which the plaintiff relied (5) that proximately caused the plaintiff's loss." <u>McDonald v. Alan Bush Brokerage Co.</u>, 863 F.2d 809, 814 (11th Cir. 1999).

Applying the facts of the case to these elements, the Court explained that Plaintiffs must prove that the omission in the Pacific Life prospectus was "material." The Court determined that this inquiry was amenable to common proof because materiality is measured by an objective, "reasonable investor" standard. <u>Cooper</u>, 229 F.R.D. at 261. Likewise, the

5

Court concluded that Plaintiffs could prove scienter with common evidence because the insurer's state of mind would not vary from client to client.

The Court further held that Plaintiffs could rely on the presumption of reliance, pursuant to <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 154 (1972), so there would not be individualized issues relating to "transaction" causation. The Court also found that Plaintiffs could use classwide proof to demonstrate "loss" causation, given that class members would rely on the same actuarial evidence to demonstrate that Defendant caused whatever damages they suffered. <u>Cooper</u>, 229 F.R.D. at 262.[2]

Pacific Life makes two overarching arguments in its decertification motion. First, Pacific Life insists that the <u>Affiliated Ute</u> presumption of reliance is unwarranted and inappropriate in this case. In support of this position, the insurer raises several points. According to Defendants, <u>Affiliated Ute</u> is distinguishable from the facts presented here, because the discovery record shows that the tax

---

[2] In addition, whether class members were on constructive notice of their claims by virtue of media coverage is a common issue. <u>Cooper</u>, 229 F.R.D. at 264-65; <u>In re Monumental Life Ins. Co.</u>, 365 F.3d 408, 421 (5th Cir. 2004).

6

redundancy issue was disclosed widely by registered representatives and broker-dealers. Defendants also assert that certain class members' post-class period conduct undermines any presumption that they relied on the issuer's omission to their detriment.

Second, Pacific Life urges that the Court erred when it certified the class based on any suitability theory of liability. Pacific Life criticizes the Court's certification order in this respect as an unprecedented and ill-advised determination, and attacks the credibility of Plaintiff's expert, Vincent Micciche.

After due consideration, the Court finds that Pacific Life's voluminous and multifaceted presentation is misplaced. The Court has previously considered and rejected nearly every argument raised by Defendants, and has likewise considered similar evidentiary materials and found that they did not preclude certification. See, e.g., Cooper, 229 F.R.D. at 260-65; see also Nelson v. Pac. Life Ins. Co., Fed. Sec. L. Rep. (CCH) P92,876, 2004 U.S. Dist. LEXIS 13499 (S.D. Ga. July 12, 2004). Other arguments raised by Pacific Life, related to the suitability theories of recovery, do not present individualized issues, and do not warrant decertification.

AO 72A
(Rev. 8/82)

## I.    PRESUMPTION OF RELIANCE APPLIES

Pacific Life contends that the record now shows that the broker-dealers were careful to ensure that the relevant disclosures were made, by sending notices and memoranda to registered representatives that required or encouraged disclosure of the tax-deferral redundancy of this product for qualified plan investors.  Furthermore, Defendants assert that many broker-dealers or registered representatives required customers to sign certain forms acknowledging the tax-deferral redundancy of their investment.[3]

Moreover, about twenty percent of class members made additional premium payments after May 1, 2002, the date when Pacific Life sent a new prospectus to "virtually all" class members.  Dkt. No. 110, Pacific Life Decert. App'x, Tab 9, Teeter Decl. ¶6 (Mar. 16, 2006).  Pacific Life contends that this prospectus served as an adequate notification of the tax status of their contracts.[4]

---

[3]

    If signed forms exist, Pacific Life should be able to use discovery mechanisms to compel broker-dealers to produce this evidence.  However, if Pacific Life cannot produce such proof, the jury could infer that broker-dealers did not, in fact, require that customers sign such forms.  That is, in absence of actual proof, this conceivable defense may be underwhelming to a factfinder.

[4]

    The document advised customers to consider whether the variable annuity "is a suitable investment if you are investing through a Qualified
(continued...)

The class period in this matter, however, ran from August 19, 1998, to April 30, 2002, and any disclosures occurring after the class period are not relevant to class certification. Likewise, whether Plaintiffs bought new variable annuities from different issuers after the class period ended is irrelevant to the certification decision. Dkt. No. 110, Pacific Life Decert. App'x, Tab 9, Teeter Decl. ¶10 (Mar. 16, 2006).

Pacific Life also contends that its printing of nearly two million copies of a "Client Guide," halfway through the class period, counsels in favor of decertification. The May 2000 Client Guide noted that the annuity should be used by qualified plan investors only "to benefit from the annuity's features other than tax deferral." Dkt. No. 107 at 16.

Notably, Pacific Life recognizes that it does not know who received this publication, and concedes that a jury cannot feasibly make that determination with respect to each class member. According to the issuer, Client Guides were sent to broker-dealers upon request, and about half the class members bought Pacific Life variable annuities after this document was printed. The reason Pacific Life asserts that it does not know who got these booklets is because they kept no records of

---

⁴(...continued)
Plan." Dkt. No. 107 at 14.

distribution.  Yet, unless Pacific Life can produce accurate records in this respect, this defense may be accorded little weight by the finder of fact.

As the Court found previously, the import of the Client Guide is a question of fact for the jury to determine. Assuming, _arguendo_, that the Client Guide was sufficient to alter the total mix of information as to any given class member, it is _Pacific Life's_ burden to demonstrate that particular class members received this document. _Cooper_, 229 F.R.D. at 264.  Bare proof that it printed two million copies is of little moment, particularly where there is no evidence that it distributed copies to class members.

According to Defendants, all of these matters would require individual "mini-trials" to determine whether class members could recover.  Pacific Life contends that, to present a complete defense, it would need to call witnesses from each of the 1,000 broker-dealers involved to testify about their compliance policies and disclosure practices.

Nonetheless, contrary to Pacific Life's argument, there is a basis for presuming that class members were not informed adequately regarding the tax-deferral redundancy of their investment, namely, the allegedly misleading prospectus.  In

10

considering the relative importance of the matters raised by Pacific Life, including various possible oral and written disclosures by broker-dealers or registered representatives, post-class period conduct of class members, the Client Guide, and media reports,[5] the Court and the parties ought not lose sight of the primacy of the Pacific Life prospectus, which all class members received.

Defendants' point of sale defenses and related issues do not overwhelm the common issues that remain to be determined classwide.  Significantly, the Court previously rejected certification based on Pacific Life's responsibility for registered representatives' inadequate point of sale disclosures based on a principal-agency theory.  Cooper, 229 F.R.D. at 260.

As Plaintiffs note, the trial will focus on, but may not be limited to, three main, class-wide aspects of Pacific Life's potential liability.  First, the jury must determine whether the prospectus was sufficient to put class members on notice of the tax-deferral redundancy of their investments.  Second,

---

[5]     See, e.g., Kenneth L. Fisher, You Bought A What?!, Forbes, Sept. 19, 2005, at 240; Frederic G. Mark, Keep Your IRA, Barron's, Mar. 27, 2006, at 56; Jonathan Clements, Why Big Insurers Are Staying Away From This Year's Hot Investment Product, Wall St. J., Dec. 14, 2005, at D1; Kathy M. Kristof, Trying to Tame Annuity Sales, L.A. Times, Feb. 12, 2006, at C3.

AO 72A
(Rev. 8/82)

the jury will consider whether Pacific Life must make independent suitability determinations when it receives qualified plan customers' applications to purchase variable annuities. Third, and relatedly, the jury will decide whether Pacific Life is liable for failure to conduct oversight of broker-dealers' and registered representatives' separate suitability determinations.

While particular disclosure forms, like those produced through discovery, do not defeat predominance of common issues, that does not mean that such forms cannot serve to rebut the presumption of reliance on the merits. See Cooper, 229 F.R.D. at 262-63.

According to Pacific Life, class-wide reliance should not be presumed under Affiliated Ute because it had "no obligation to disclose" to Plaintiffs how their variable annuities might be treated under the tax law, and also because there was no withholding of a material fact from the class members. Yet, the suggestion that such an omission is not actionable is contrary to well-established securities law. Rule 10b-5 makes it unlawful to fail to disclose in a prospectus "a material fact necessary in order to make the statements, in the light

of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5 (2006).

In the prospectus at issue, Pacific Life stated that:

> recent federal tax legislation has expanded the type of IRAs available to individuals for tax deferred retirement savings:  In addition to "traditional" IRAs established under Code Section 408, there are Roth IRAs. . . .  Depending on the circumstances of the individual, contributions may be made on a deductible or non-deductible basis.

1998 Pacific Life Prospectus 35.

Pacific Life's failure to state that variable annuities' tax-deferral feature is unnecessary and duplicative when used in conjunction with such a plan could be considered a material omission. <u>Nelson</u>, 2004 U.S. Dist. LEXIS 13499, at *11-*16. Established precedent supports that determination. <u>Cooper</u>, 229 F.R.D. at 252 (citing authorities); <u>see</u> <u>also</u> <u>Malhorta v. Equitable Life Assurance Society</u>, 364 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (recognizing that omissions are actionable where (1) there is a duty to disclose or (2) where "the omitted information is required to make other information not materially false or misleading.").[6]

---

[6] The cases relied on by Pacific Life for the opposite conclusion actually recognize as much. <u>See</u> <u>Benzon v. Morgan Stanley Distribs., Inc.</u>, 420 F.3d 598, 612 (6th Cir. 2005); <u>In re VMS Secs. Litig.</u>, 752 F. Supp. 1373, 1396 (N.D. Ill. 1990); <u>In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.</u>, No. 03 Civ. 8208 (RO), 2006 WL 1008138, at *7 (S.D.N.Y. Apr.
(continued...)

AO 72A
(Rev. 8/82)

Second, Pacific Life argues that <u>Affiliated Ute</u> is distinguishable because, if an issuer fails to mention a particular fact, but that fact is already part of the total mix of information available to a reasonable investor, the defendant's omission is not "material," even if the fact is important and the plaintiff did not actually know about the fact.[7]

_____

[6](...continued)
18, 2006).

[7]

For a fact to be "material" in the context of a securities fraud claim, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976). Materiality is judged by looking at the matter based on the expectations of the objective, reasonable investor. When uncertain events are at issue, the materiality of those events depends on "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." <u>Basic</u>, 485 U.S. at 238; <u>see</u> <u>generally</u>, David A. Hoffman, <u>The "Duty" to Be a Rational Shareholder</u>, 90 Minn. L. Rev. 537, 545-607 (2006).

The Supreme Court has expressly stated that in such circumstances no single event or factor is necessarily determinative of the materiality inquiry. <u>Id</u> at 239, 108 S.Ct. 978. Summary judgment may not be granted on the ground that alleged omissions are immaterial "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir.1985).

<u>Castellano v. Young & Rubicam, Inc.</u>, 257 F.3d 171, 180 (2d Cir. 2001).

According to Pacific Life, class certification is inappropriate because reliance is a subjective, individualized inquiry. <u>Abell v. Potomac Ins. Co.</u>, 858 F.2d 1104, 1117-18 (5th Cir. 1988). Still, Plaintiffs have the benefit of the <u>Affiliated Ute</u> presumption of reliance, and it is up to Defendants to prove that class members had actual notice of the averred fraud.

AO 72A
(Rev. 8/82)

Yet, based on its alleged omission in the prospectus, it is <u>Pacific Life's</u> duty to demonstrate that class members were on notice of the alleged fraud by some other source.  This is entirely consistent with <u>Affiliated Ute</u>, and Pacific Life has presented no basis on which the instant case ought to be distinguished from the facts presented there.

> '[N]ot every mixture with the true will neutralize the deceptive,' <u>Virginia Bankshares, Inc. v. Sandberg</u>, 111 S. Ct. at 2760, and even information actually sent to shareholders need not be considered part of the total mix reasonably available to them if 'the true' is 'buried' in unrelated discussions.

<u>United Paperworkers Int'l Union v. Int'l Paper Co.</u>, 985 F.2d 1190, 1198-99 (2d. Cir. 1993).

The "total mix of information" concept does not preclude certification.  The issuer's conceivable point of sale defenses do not obviate class treatment, but Pacific Life could prevail on the merits, as to any particular class member, if it shows that such disclosures altered the total mix of information available to that person.  Undoubtedly, some class members may have bought the product with full knowledge that the tax shelter aspect of the annuity was superfluous for their circumstances.  To the extent that Pacific Life can identify class members that knew about the alleged fraud, then those

AO 72A
(Rev. 8/82)

persons may be excluded from any recovery.   <u>Cooper</u>, 229 F.R.D. at 263.

In sum, Pacific Life's presentation invites the Court to engage in a parlor debate about the import of various pieces of evidence, or the worthiness of certain defenses, even where no evidence has been presented with respect to those imaginable defenses.   The Court must decline to wade into this controversy.   Instead, these are matters for the jury's consideration, and under <u>Affiliated Ute</u>, Defendant bears the burden of establishing the significance of whatever evidence it will be able to produce, not Plaintiffs.[8]   Slight differences among class members will not disturb class treatment where liability can be determined across the class profitably.[9]

---

[8]

Pacific Life criticizes the Court's certification order reasoning regarding the import of the Client Guides because the Client Guide is part of the total mix of information, along with the prospectus, any forms signed by class members, any oral disclosures made, and any news articles read.   Notwithstanding this, it remains Pacific Life's burden under <u>Affiliated Ute</u> to demonstrate, with respect to any given class member, that the total mix of information available to him was sufficient to place him on notice of the alleged fraud.   The Court indicated previously that it was conceivable that the Client Guide could "tip the balance" in altering the total mix of information as to any given class member.

[9]

Decertification is not warranted under <u>Heffner v. Blue Cross & Blue Shield of Ala., Inc.</u>, because that decision involved affirmative misrepresentations.   443 F.3d 1330, 1344-45 (11th Cir. 2006).   Typically, such cases are not susceptible to class treatment because reliance is subject to individual proof.   In contrast, this is an omissions case, and

(continued...)

AO 72A
(Rev. 8/82)

As has been alluded to, Pacific Life has raised an array of trial management concerns.  In evaluating these matters, the Court recognizes that both traditional and modern devices provide the trial judge with an array of options to render protracted complex litigation matters triable.  Litigants are not guaranteed a perfect trial, just a fair one.

To that end, relevant evidence is usually admissible, but the trial court can exclude such proof if its probative value is substantially outweighed by its potential to "mislead[] the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Therefore, Defendant's supposition that they have an unfettered right to call tens of thousands of witnesses, and thereby create a trial lasting years on end, is not well-taken. Fortunately for persons who suffer modest or relatively small injuries in common with many others, civil defendants cannot so easily "opt-out" of the class action.  If what Pacific Life proposes were true, the device could not exist or operate at all.

---

[9](...continued)

Heffner has no bearing on the Court's certification decision.  See also Cooper, 229 F.R.D. at 263 n.27 (distinguishing Buford v. H & R Block, Inc., 168 F.R.D. 340 (S.D. Ga. 1996), on this basis).

AO 72A
(Rev. 8/82)

Rather, the Court has a powerful arsenal from which to draw in making otherwise intractable class actions manageable for trial, including trial of the action as to particular issues only, the use of subclasses, sampling, and the use of bifurcation techniques to "wield" Rule 23 like a "scalpel," instead of a "meat axe."  Arthur R. Miller, Of Frankenstein Monsters and Shining Knights:  Myth, Reality and the "Class Action Problem", 92 Harv. L. Rev. 664, 680 (1979); Jeffrey W. Stempel, Opportunities for Improvement Through a More Functional Approach to Class Treatment of Disputes, 83 Wash. U.L. Rev. 1127 (2005); Laurens Walker, A Model Plan to Resolve Federal Class Action Cases by Jury Trial, 88 Va. L. Rev. 405, 412-20 (2002).

For example, the Court could employ multiple juries to consider distinct issues through the careful use of special interrogatories to protect the parties' Seventh Amendment rights.  See Fed. R. Civ. P. 23 (c)(4)[10]; Steven S. Gensler, Bifurcation Unbound, 75 Wash. L. Rev. 705 (2000); Jon Romberg, Half a Loaf is Predominant and Superior to None: Class

---

[10]     That rule provides:  "When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

18

<u>Certification of Particular Issues Under Rule 23(c)(4)(A)</u>, 2002 Utah L. Rev. 249 (2002).

The Seventh Amendment provides that: "In suits at common law . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

According to Pacific Life, constitutional concerns are inherent in any bifurcation of this litigation because all issues of law must be tried before a single jury. However, the reexamination clause does not prohibit separate juries from considering overlapping evidence, so long as the two juries do not actually decide the same basic issues. <u>See</u> <u>Houseman v. U.S. Aviation Underwriters</u>, 171 F.3d 1117, 1126-28 (7th Cir. 1999); <u>In re Innotron Diagnostics</u>, 800 F.2d 1077, 1086 (Fed. Cir. 1986).

In the context of an employment discrimination class action, the question of whether an individual plaintiff actually has been injured does not require a jury to revisit the question of whether the defendant, in fact, has a discriminatory policy. In fact, several courts have approved of a bifurcated class action trial in such circumstances. <u>EEOC</u>

AO 72A
(Rev. 8/82)

v. McDonnell Douglas Corp., 960 F. Supp. 203, 205 (E.D. Mo. 1996)(citing cases).

> [T]he second jury will be asked to find facts about the individual employment decisions; accepting the pattern of discrimination as a proven fact, the second jury will inquire whether actions taken towards a particular plaintiff were the result of that policy or not.  Given this structure for a bifurcated employment class, there is no reason a class suit alleging intentional discrimination should run afoul of the Seventh Amendment.

Id.

Likewise, "individualized proceedings on similar issues such as reliance or damages are not inconsistent with class certification when the bulk of the liability issues in a given class action can be determined on a classwide basis." Mathis v. Bess, 138 F.R.D. 390, 395 (S.D.N.Y. 1991).

As Judge Frankel explained near the time the modern class action device was crafted:

> The effective administration of (b)(3) actions will probably require wide use of the already familiar device of split trials.  And I submit that a lively awareness of this sensible device should serve to postpone or minimize some of the excessively frightening complications that seem overwhelming from a threshold view of the case.

Marvin E. Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 47 (1967).

AO 72A
(Rev. 8/82)

With that in mind, an overly broad, prophylactic reading of the Seventh Amendment should be avoided, because it would render Rule 23(c)(4)(A) an unconstitutional nullity. Courts must be very careful about reaching such conclusions, because it means that Congress, the Supreme Court, and the Advisory Committee all erred in their initial assessments by promulgating the rule in the first place. <u>Hanna v. Plumer</u>, 380 U.S. 460, 471 (1965); Rules Enabling Act, 28 U.S.C. § 2072 (prohibiting rules of procedure that modify, abridge, or enlarge a substantive right).

Pacific Life's arguments, while worthy of consideration, would be better made if it had presented actual evidence that would require a multitude of individual inquiries at trial. Here, the mere incantation of such a possibility, based on speculative proof, or conceivable defenses, is insufficient to decertify the class. Consistent with the parties' constitutional and statutory rights, and a fair and efficient resolution of this dispute, the Court will consider using any and all of these trial management options, as necessary.

AO 72A
(Rev. 8/82)

## II.  LIABILITY FOR SUITABILITY VIOLATIONS

Pacific Life asserts that under established case law, it can have no liability for suitability oversight or independent suitability determinations.  The insurer also  attacks the credibility of Plaintiff's expert, Vincent Micciche.  Yet, liability exists, or not, on a class-wide basis.  Pacific Life's arguments regarding suitability violations go to the merits of Plaintiffs' claims, and they are raised more properly in a motion for summary judgment, or at trial.  The class is not due to be decertified as to Plaintiffs' suitability averments.[11]  The Court considered the possibility that different registered representatives may have used varying standards of suitability in making recommendations, but decided that Pacific Life's responsibility for "uniform disclaiming of responsibility for suitability reviews of customer's purchases" was a classwide dispute amenable to common proof.  Cooper, 229 F.R.D. at 264.

As has been explained, Pacific Life's purported decision to give incomplete, misleading information about the financial

_____

[11]

Moreover, Defendants' attack on the credibility of Plaintiffs' expert is not a basis for decertification.  In re Commercial Tissue Prods., 183 F.R.D. 589, 596 (N.D. Fla. 1998); Law v. NCAA, No. 94-2053-KHV, 1998 U.S. Dist. LEXIS 6608, at *12 (D. Kan. Apr. 17, 1998).

22

structure of its product, and its conceivable benefits to particular purchasers, could render any suitability determination by downstream actors incomplete and inadequate. A jury could find, on a classwide basis, that Pacific Life had superior knowledge of the material facts concerning its annuities, including the low actuarial value of the death benefit, and the design and pricing of the product to operate as a high-commission, high-fee tax shelter. Cooper, 229 F.R.D. at 265, 254. Thus, the fact that individual registered representatives might believe that they conducted suitability determinations properly would not necessarily be determinative to Pacific Life's liability. See Plato, Allegory of the Cave, The Republic, Book 7 (390 B.C.).

The Court concludes that a class action remains the superior method of adjudicating this dispute. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir. 1983). As the Court has stressed repeatedly, that determination remains tentative, and the Court will revisit class certification if subsequent developments in the case so require.

AO 72A
(Rev. 8/82)

**CONCLUSION**

For the reasons explained above, Defendants' motion to decertify the class is **DENIED**. Dkt. No. 106.  Pacific Life's motion for a hearing on the motion to decertify, having been granted and previously argued, is hereby **DISMISSED** as moot. Dkt. No. 108.

**SO ORDERED**, this _____14th_____ day of September, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

24